UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM R. SARALE; JULIE ANN SARALE; JULIE ANN SARALE, as TRUSTEE OF THE JAMES J. CAVALLI TESTAMENTARY TRUST; JULIE ANN SARALE, as TRUSTEE OF THE EVA M. CAVALLI 2007 TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC GAS & ELECTRIC COMPANY, a California Corporation; CALIFORNIA INDEPENDENT SYSTEM OPERATOR CORPORATION, a California Nonprofit Public Benefit Corporation; DORA 1-50,<br><br>Defendant. | No. 2:14-cv-02573-TLN-CKD<br><br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH PREJUDICE** |

This matter is before the Court pursuant to Defendant Pacific Gas & Electric Company ("PG&E") and California Independent System Operator Corporation's ("CAISO") (together "Defendants") Motions to Dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) ("Rule 12(b)(1)" and "Rule 12(b)(6)"). (ECF No. 14; ECF No. 13.) Plaintiffs William R. Sarale and Julie Ann Sarale ("Plaintiffs") filed Oppositions to Defendants' motions. (ECF No. 17; ECF No. 18.) The Court has carefully considered the arguments raised in Defendants' motions and replies, as well as Plaintiffs' oppositions. For the reasons set forth

1

1    below, Defendants' Motions to Dismiss as to all counts are GRANTED with PREJUDICE.

2          **I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

3          Plaintiffs own approximately 40 acres on 8-Mile Road in northeast San Joaquin County.

4    (ECF No. 1 at ¶ 9.)  Plaintiffs or their family have farmed the property since 1922.  (ECF No. 1 at

5    ¶ 9.)  In 1915, PG&E obtained an easement for a 50-foot right of way for electrical powerlines.

6    (ECF No. 1 at ¶10.)  This easement gave PG&E the "right of erecting, constructing,

7    reconstructing, replacing, repairing, maintaining, and using for the transmission and distribution

8    of electricity, a single line of towers and wires suspended thereon and supported thereby."  (ECF

9    No. 14-1 at 21; ECF No. 13-4 at 15.)  The easement requires PG&E to "avoid as far as it is

10   reasonably can, interfering with the use by [Plaintiffs] of such lands for mining, agriculture, and

11   other purposes."  (ECF No. 14-1 at 22; ECF No. 13-4 at 16.)  However, the easement also gives

12   PG&E the "full right and liberty of cutting and clearing away all trees and brush on either side of

13   the center line whenever necessary or proper for the convenient use and enjoyment of the said

14   line of towers and wires."  (ECF No. 14-1 at 22; ECF No. 13-4 at 16.)

15         Walnut trees were grown under the power lines.  (ECF No. 1 at ¶ 9–11.)  From 1915 to

16   2004, PG&E maintained the lines by annually cutting the walnut trees to approximately 10 feet of

17   clearance from the powerlines.  (ECF No. 1 at ¶ 11.)  Beginning in 2004, PG&E began cutting a

18   20 foot clearance.  (ECF No. 1 at ¶ 15.)  Plaintiffs allege this increase in clearance resulted in the

19   walnut trees losing many of their crop-producing branches.  (ECF No. 1 at ¶ 15.)  Plaintiffs allege

20   that the increased trimming led to the loss of 50 tons of walnuts with a value of $120,000 and

21   physical damages to trees in excess of $2,000.  (ECF No. 1 at ¶ 58.)

22         On October 25, 2007, Plaintiffs filed a complaint in San Joaquin County Superior Court

23   seeking declaratory relief as to the existence of an easement and defining property rights under

24   said easement; an injunction against PG&E prohibiting the threat of repeated destruction of

25   Plaintiffs' trees if they refused to grant expanded easements; damages for the harm to the

26   property; and a civil rights violation.  (ECF No. 14-1 at 7–24; ECF No. 13-4 at 4–9.)  On a

27   motion to dismiss, the San Joaquin County Superior Court found that the California Public

28   Utilities Commission ("CPUC") had proper jurisdiction over the case and that Plaintiffs must:

1    first seek a finding from the [CPUC] that PG&E's vegetation
     management practices are excessive or otherwise out of
2    conformance with [CPUC] regulations.  If the [CPUC] found in
     [Plaintiffs'] favor on these matters, [Plaintiffs] might then seek
3    damages before [the superior court] for the wrongs they allege.

4    (ECF No. 14-1 at 32; ECF No. 13-5 at 11.)  The San Joaquin County Superior Court therefore

5    dismissed the case.  (ECF No. 14-1 at 32; ECF No. 13-5 at 11.)

6          Plaintiffs appealed the San Joaquin County Superior Court judgment.  (ECF No. 14-1 at

7    32; ECF No. 13-5 at 11.)  The California Court of Appeal affirmed the Superior Court's decision

8    to dismiss based on jurisdiction and briefly addressed the easement.  (ECF No. 14-1 at 26–50;

9    ECF No. 13-5 at 3–42.)  The California Court of Appeal noted that Plaintiffs questioned the

10   existence of the easement, but attached the grant of easement to their complaint.  (ECF No. 14-1

11   at 39–40; ECF No. 13-5 at 22–24.)  The California Court of Appeal stated that the easement did

12   indeed exist and further found that the grant of demurrer was properly granted without leave to

13   amend because there was no remaining question of fact.  (ECF No. 14-1 at 39–40; ECF No. 13-5

14   at 22–24.)

15         Plaintiffs then brought their complaint before the CPUC on June 29, 2011.  (ECF No. 1 at

16   ¶ 52.)  In that complaint, Plaintiffs alleged taking of property; requested injunctive relief; and

17   requested declaratory relief as to false and misleading representations.  (ECF No. 14-1 at 65–69;

18   ECF No. 13-6 at 12–16.)  The CPUC decided that PG&E's extended trimming was reasonable

19   and within the scope of the regulations that control vegetation management near transmission

20   lines.[1]  (ECF No. 14-1 at 96–98; ECF No. 13-7 at 18–20.)  Specifically, General Order 95 ("GO

21   95"), Appendix E, requires a ten-foot *minimum* vegetation clearance for 115kV transmission

22   lines, the type of lines on Plaintiffs' property.  (ECF No. 14-1 at 97; ECF No. 13-6 at 19.)  The

23   CPUC explicitly stated that this must be treated as a minimum and not misinterpreted as a

24   maximum.  (ECF No. 14-1 at 109; ECF No. 13-7 at 9.)  Additionally, CAISO standards require

25   Participating Transmission Owners, including PG&E, to submit Transmission Vegetation

26   Management Program standards ("TVMP").  (ECF No. 14-1 at 110; ECF No. 13-7 at 10.)

27

28   _____
     [1] "Regulations with respect to vegetation management near transmission lines are governed by CAISO, GO 95, Rules
     35 and 37, and the North American Electric Reliability Council (NERC)."  (ECF No. 14-1 at 108.)

PG&E's TVMP required the 20-foot clearance, and once submitted CAISO annually audits PG&E to ensure they are following the TVMP requirement.  (ECF No. 41-1 at 98; ECF No. 13-6 at 20.)  Thus, CAISO indirectly requires PG&E to trim encroaching vegetation to a 20-foot clearance.  (ECF No. 41-1 at 98; ECF No. 13-6 at 20.)

The CPUC declined to rule on the scope and meaning of the easement, stating that "it is for the Courts, not the Commission, to interpret easements and determine parties' respective property rights under an easement."  (ECF No. 14-1 at 136; ECF No. 13-8 at 14.)  Plaintiffs filed an appeal with the CPUC which was denied on May 1, 2014.  (ECF No. 1 at ¶ 53.)  Then, in accordance with CPUC rules, Plaintiffs filed a request for rehearing which was denied on October 3, 2014.  (ECF No. 1 at ¶ 54.)  This constituted the CPUC's final ruling on the issue.  (ECF No. 1 at ¶ 54.)

Plaintiffs did not appeal the agency decision to the California Superior Court, but instead filed the instant complaint on October 31, 2014 against PG&E and CAISO.  (ECF No. 1.)  While PG&E has been a named defendant in all of the prior actions, CAISO has only now been joined in the case.  (ECF No. 13-1 at 7.)  CAISO is a California nonprofit public benefit corporation vested with regulatory power related to the distribution of electrical energy.  (ECF No. 1 at ¶ 6.)  While Plaintiffs' reasons for joining CAISO are not stated explicitly in their complaint or briefing, the Court gathers that Plaintiffs take issue with CAISO's application of regulations which allowed PG&E to increase its tree trimming and alleged representations that such an increase was required under those regulations.  (See ECF No. 1.)

The Complaint alleges a physical taking in violation of the Fifth Amendment and 42 U.S.C. § 1983; conspiracy to defraud and fraud; taking and damaging of property without just compensation under Cal. Const. Art. I, Sec. 18 and inverse condemnation; common law trespass and trespass in violation of Cal. Civ. Code § 3346 and Cal. Code Civ. P. § 1021.9; and violation of civil rights under Cal. Civ. Code § 52.1.  (ECF No. 1.)  Counts I through IV are alleged against PG&E and CAISO, and Count V (civil rights violation) is alleged against PG&E only.  (ECF No. 1.)

Defendants have filed motions to dismiss under Rule 12(b)(1) and 12(b)(6).  (ECF No. 14;

ECF No. 13.)  Defendants argue that the Complaint should be dismissed for lack of subject matter jurisdiction under the *Burford* Abstention Doctrine and the *Rooker-Feldman* Doctrine.  (ECF No. 14 at 7–11; ECF No. 13 at 8–11.)  Additionally, they argue that the claims are time barred and should be dismissed for failure to state a claim due to Collateral Estoppel and Res Judicata.  (ECF No. 14 at 11–18; ECF No. 13 at 13–18.)  CAISO further argues that Plaintiffs cannot state a claim because of the existence of the easement.  (ECF No. 14 at 19–20.)

## II.   STANDARD OF LAW

### A.  Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted.  The party seeking to invoke the court's jurisdiction bears the burden of establishing it.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir.1989).  A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be made on the grounds that the complaint fails to present such a jurisdictional basis, i.e., that the lack of jurisdiction appears from the "face of the complaint," or as a matter of fact, i.e., lack of jurisdiction based on extrinsic evidence apart from the pleadings.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.2003).

### B.  Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim…is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the…laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims … across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any

1  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

2  Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

3  *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

4  1998).

5          If a complaint fails to state a plausible claim, "[a] district court should grant leave to

6  amend even if no request to amend the pleading was made, unless it determines that the pleading

7  could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

8  (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see*

9  *also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

10  denying leave to amend when amendment would be futile).  Although a district court should

11  freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

12  deny such leave is 'particularly broad' where the plaintiff has previously amended its

13  complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

14  2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

15          **III.     ANALYSIS**

16                  A. <u>Subject Matter Jurisdiction</u>

17          Plaintiffs contend that the Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1343,

18  and 1367 and 42 U.S.C. § 1983.  (ECF No. 1 at ¶ 1.)  Defendants do not dispute that this Court

19  has original jurisdiction under these statutes, but rather argue that the Complaint should be

20  dismissed under the *Rooker-Feldman* Doctrine and the *Burford* Abstention Doctrine.  (ECF No.

21  14 at 7–11; ECF No. 13 at 8–11.)

22                  *i.*  Rooker-Feldman Doctrine

23          Defendants argue that Plaintiffs' Complaint brings a forbidden de facto appeal of the state

24  court decision because the issues are "inextricably intertwined" with the state court decision.

25  (ECF No. 14 at 7–11; ECF No. 13 at 8–11.)  The *Rooker-Feldman* doctrine bars subject matter

26  jurisdiction if a "federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a

27  state court, and seeks relief from a state court judgment based on that decision...If, on the other

28  hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse

1   party, *Rooker–Feldman* does not bar jurisdiction." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir.

2   2003). Thus, *Rooker-Feldman* "applies only when the federal plaintiff both asserts as her injury

3   legal error or errors by the state court *and* seeks as her remedy relief from the state court

4   judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (emphasis original).

5           Here, Plaintiffs allege taking, fraud, trespass, and violation of civil rights against

6   Defendants PG&E and CAISO. (ECF No. 1.) They request monetary damages for these injuries

7   from the named Defendants. (ECF No. 1.) Nowhere in the Complaint do Plaintiffs allege harm

8   resulting from a state court decision, nor do they seek relief from the state court judgment as a

9   remedy. (ECF No. 1.) Thus, the *Rooker-Feldman* doctrine does not apply.

10          Defendants assert that because issues in the instant complaint are inextricably intertwined

11  with the state court decision the case should be dismissed under *Rooker-Feldman*. However, the

12  Ninth Circuit clarified the operation of "inextricably intertwined" issues in *Noel v. Hall*:

13              The federal suit is not a forbidden de facto appeal because it is
                "inextricably intertwined" with something. Rather, it is simply a
14              forbidden de facto appeal. Only when there is already a forbidden
                de facto appeal in federal court does the "inextricably intertwined"
15              test come into play: Once a federal plaintiff seeks to bring a
                forbidden de facto appeal, as in *Feldman,* that federal plaintiff may
16              not seek to litigate an issue that is "inextricably intertwined" with
                the state court judicial decision from which the forbidden de facto
17              appeal is brought.

18  *Noel*, 341 F.3d at 1158. Because there is not an underlying forbidden de facto appeal, the issues

19  intertwined with the state court decision in the instant case may not be dismissed under *Rooker-*

20  *Feldman*.[2]

21                      *ii.* Burford Abstention Doctrine

22          Defendants argue that the Complaint should be dismissed under the *Burford* Abstention

23  Doctrine because the instant matter involves a complicated regulatory scheme and is of great state

24  interest. (ECF No. 14 at 7–11; ECF No. 13 at 8–11.) Plaintiffs contend that their complaint does

25  not challenge the CPUC's regulation or its application of the regulation. (ECF No. 17 at 4–5;

26  ─────────────────
    [2] Plaintiffs argue that because their Complaint has a fraud claim in it, the *Rooker-Feldman* Doctrine per se does not
    apply. (ECF No. 17 at 11.) This is a misguided characterization of the law. A fraud claim can only overcome
27  *Rooker-Feldman* if the plaintiffs are claiming injury from an erroneous state court decision because of *extrinsic* fraud
    perpetrated by a third-party upon the state court which resulted in the erroneous decision. *Kougasian v. TMSL, Inc.*,
28  359 F.3d 1136, 1140–41 (9th Cir. 2004).

8

1  ECF No. 18 at 7–11.)

2      The Supreme Court has defined the *Burford* Abstention Doctrine, holding that

3      [w]here timely and adequate state-court review is available, a
       federal court *sitting in equity* must decline to interfere with the
4      proceedings or orders of state administrative agencies: (1) when
       there are 'difficult questions of state law bearing on policy
5      problems of substantial public import whose importance transcends
       the result in the case then at bar'; or (2) where the 'exercise of
6      federal review of the question in a case and in similar cases would
       be disruptive of state efforts to establish a coherent policy with
7      respect to a matter of substantial public concern.'

8  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)

9  (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976))

10 (emphasis added).

11     However, the Supreme Court was careful to emphasize that such abstention is the

12 exception and not the rule.  *New Orleans Pub. Serv., Inc.*, 491 U.S.  at 359; *Cohens v. Virginia*,

13 19 U.S. 264, 56 (1821) ("We have no more right to decline the exercise of jurisdiction which is

14 given, than to usurp that which is not given. The one or the other would be treason to the

15 Constitution"); *Chicot County v. Sherwood*, 148 U.S. 529, 534 (1893) ("[T]he courts of the

16 United States are bound to proceed to judgment and to afford redress to suitors before them in

17 every case to which their jurisdiction extends.  They cannot abdicate their authority or duty in any

18 case in favor of another jurisdiction").  Furthermore, the Court limited such abstention to

19 *equitable* remedies.  *New Orleans Pub. Serv., Inc.*, 491 U.S. at 359 ("[This] principle does not

20 eliminate…the federal courts' discretion in determining whether to grant certain types of relief….

21 Thus, there are some classes of cases in which the withholding of authorized *equitable* relief

22 because of undue interference with state proceedings is the normal thing to do.") (internal

23 quotation and citation omitted) (emphasis added).

24     Here, Plaintiffs only ask for monetary damages.  (ECF No. 1.)  They are not requesting

25 equitable remedies.  (ECF No. 1.)  As such, this Court is not sitting in equity and therefore cannot

26 apply the *Burford* Abstention Doctrine.

27 ///

28 ///

1    B. Failure to State a Claim[3]

2    i.  1915 Easement[4]

3    This case presents a threshold question of the existence and scope of the 1915 grant of

4    easement across Plaintiffs' land.  Plaintiffs' claims rely on the nonexistence and limited scope of

5    the easement.  In their Complaint, Plaintiffs allege that Defendants exceeded the scope of the

6    easement, and imply that an easement may not exist at all (ECF No. 1 at ¶ 86), yet simultaneously

7    acknowledge that an easement was granted in 1915 (ECF No. 1 at ¶ 10).  Defendant CAISO

8    argues that PG&E was acting under and within the bounds of the easement when it entered the

9    property to cut the walnut trees.  (ECF No. 13-1 at 23.)  Neither party contests that the document

10   filed before this Court for judicial notice is the grant of easement in question.  (ECF No. 1 at ¶ 10;

11   ECF No. 14-1 at 21–22.)

12   a.  Existence of the Easement

13   Defendants both argue that the issue of the existence of the easement is precluded because

14   it was already decided in the state courts.  (ECF No. 13-1 at 12; ECF No. 14 at 19.)  In its

15   consideration of this case, the California Court of Appeal established the existence of the

16   easement.  (ECF No. 14-1 at 39; ECF No. 13-5 at 22–24.)  In relevant part the California Court of

17   Appeal states:

18

19   [3] Defendants make additional arguments that Plaintiffs' claims should be dismissed because they are time barred, and

20   barred because of issue and claim preclusion.  However, because the Court dismisses the Complaint on other grounds it does not reach these arguments.
     [4] A court may consider documents external to the pleadings in a motion to dismiss under the incorporation by

21   reference doctrine where the contents of the documents are alleged in the complaint and neither party questions the authenticity of the documents.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  Here, all documents supplied

22   by the parties are from state court and state agency proceedings referenced in the Complaint.  (ECF No. 1)
     Additionally, neither side disputes the authenticity of the documents except to ensure that all documents are

23   complete.  (ECF No. 17-1 at 1–2; ECF No. 18-1 at 1–2.)  As such the Court takes judicial notice of: the First Amended Complaint of Sarale et al. v. Pacific Gas and Electric Company, San Joaquin Superior Court, Case No.

24   CV033900; Sarale et al. v. Pacific Gas & Electric Company/Wilbur v. Pacific Gas & Electric Company, 189 Cal.App.4th 225 (2010); California Supreme Court Denial of Petition for Review of Third District Court of Appeal

25   Case Nos. C059873/C060515; the Complaint and all exhibits (as requested by Plaintiffs in ECF No. 18-1 at 2) filed in Sarale et al. v. Pacific Gas and Electric Co., California Public Utilities Commission, Case C.11.06-024; Presiding

26   Officer's Decision Dismissing Complaint in the action styled Sarale et al. v. Pacific Gas and Electric Co., California Public Utilities Commission, Case C.11.06-024 (September 13, 2013); Modified Presiding Officer's Decision

27   Dismissing Complaint in the action styled Sarale et al. v. Pacific Gas and Electric Co., California Public Utilities Commission, Case C.11.06-024, D.14-05-008, 2014 WL 1931954 (May 7, 2014); Order Modifying Decision (D.) 14-05-008 and Denying Rehearing, as Modified in the action styled Sarale et al. v. Pacific Gas and Electric Co.,

28   California Public Utilities Commission, Case C.11.06-024, D.14-10-026, 2014 WL 5038597 (October 2, 2014).

On appeal from a judgment of dismissal after the sustaining of a demurrer, a court must "treat as true not only the complaint's material factual allegations, but also facts that may be implied or inferred from those expressly alleged." (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1111–1112, 62 Cal.Rptr.3d 59.) We also "accept as true both facts alleged in the text of the complaint and facts appearing in exhibits attached to it. If the facts appearing in the attached exhibit contradict those expressly pleaded, those in the exhibit are given precedence. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1626–1627 [272 Cal.Rptr. 623].)" (*Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 567–568, 71 Cal.Rptr.2d 625.) Here, the grant of a right-of-way attached by the Sarales to their first amended complaint conclusively negates an allegation of the Sarales' complaint, namely the nonexistence of the utility easement on their land. The Sarales' allegation cannot withstand the clear proof of the easement's existence provided by the language of the 1915 grant….

In short, there is no remaining factual dispute in the Sarales' case because the existence of the easement is established by the exhibit attached to their complaint. (*Mead v. Sanwa Bank California, supra,* 61 Cal.App.4th at pp. 567–568, 71 Cal.Rptr.2d 625.) For lack of factual dispute in the Sarales' case, the demurrer was properly granted without leave to amend and the judgment of dismissal correctly entered.

*Sarale v. Pacific Gas and Electric Co.*, 189 Cal. App. 4th 225, 245 (2012).  (ECF No. 14-1 at 39; ECF No. 13-5 at 22–24.)

Because the California Court of Appeal has already ruled on the existence of the easement, the parties are precluded from relitigating the issue.  California law requires six elements for an issue to be precluded: "(1) 'the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding'; (2) the issue to be precluded 'must have been actually litigated in the former proceeding'; (3) the issue to be precluded 'must have been necessarily decided in the former proceeding'; (4) 'the decision in the former proceeding must be final and on the merits'; (5) 'the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding'; and (6) application of issue preclusion must be consistent with the public policies of 'preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation.'" *Kasdan v. Cnty. of Los Angeles*, 2014 WL 6669354, *4 (C.D. Cal. Nov. 24, 2014).

Here, all six elements are met.  First, the issue of the existence of the easement is identical

1    to the issue decided by the California Court of Appeal.  Second, the issue was actually litigated in

2    state court where Plaintiffs questioned the existence of the easement and submitted the grant with

3    their complaint.  Third, a decision on the merits was reached; the issue was necessarily decided as

4    Plaintiffs presented the question of property rights to the court and in determining those rights the

5    California Court of Appeal decided the issue of the existence of the easement.  Fourth, the

6    California Court of Appeal decision was final and on the merits, it affirmed the motion to dismiss

7    and considered the grant before it.  Fifth, the Plaintiffs here are the same Plaintiffs in front of the

8    California Court of Appeal.  Finally, the sixth element is met because judicial economy is not

9    promoted by the relitigation of this issue.

10         For the foregoing reasons the easement is deemed to exist and is valid.  However, before

11    the Court can determine the sufficiency of the Complaint, it must first determine the scope of the

12    easement.

13                   b.  <u>Scope of the Easement</u>

14         "Since the land [the deed] describe[d] is situated in California, interpretation of the deeds

15    is governed by California law."  *Los Angeles & Salt Lake R.R. Co v. U S*, 140 F.2d 436, 437 (9th

16    Cir. 1944).  "An easement is a restricted right to specific, limited, definable use or activity upon

17    another's property, which right must be *less* than the right of ownership."  *Mesnick v. Caton*, 183

18    Cal. App. 3d 1248, 1261 (1986).  The extent and scope of an easement is "determined by the

19    terms of the grant, or the nature of the enjoyment by which it was acquired."  Cal. Civ. Code §

20    806.  In an express easement, "the only interests that are transferred from the grantor to the

21    grantee are the interests expressed in the grant and those necessarily incident to the interests."

22    *Tri-Dam v. Michael*, No. 1:11-CV-2138-AWI-SMS, 2014 WL 1285644, at *5 (E.D. Cal. Mar. 28,

23    2014) (citing *Pasadena v. California–Michigan Land & Water Co.*, 17 Cal.2d 576, 579 (1941)).

24    An easement, "unless it is ambiguous, must be construed by a consideration of its own terms.

25    The meaning and intent thereof is a question of law ...."  *Gray v. McCormick*, 167 Cal.App.4th

26    1019, 1024 (2008) (citation omitted); *Scruby v. Vintage Grapevine, Inc.*, 37 Cal. App. 4th 697,

27    702-03, 43 Cal. Rptr. 2d 810 (1995), *as modified on denial of reh'g* (Sept. 6, 1995) ("In

28    construing an instrument conveying an easement, the rules applicable to the construction of deeds

1    generally apply.  If the language is clear and explicit in the conveyance, there is no occasion for

2    the use of parol evidence to show the nature and extent of the rights acquired").

3         Here, there is a grant[5] from 1915 giving PG&E the "right of erecting, constructing,

4    reconstructing, replacing, repairing, maintaining, and using for the transmission and distribution

5    of electricity, a single line of towers and wires suspended thereon and supported thereby."  (ECF

6    No. 14-1 at 21; ECF No. 13-4 at 15.)  The grant requires that PG&E "avoid so far as it reasonably

7    can, interfering with the use of such lands for agriculture" (hereinafter "interference clause").

8    (ECF No. 14-1 at 22; ECF No. 13-4 at 16.)  However, the grant then gives PG&E the "full right

9    and liberty of cutting and clearing away all trees and brush on either side of said center line

10   whenever necessary and proper for the convenient use and enjoyment of the said line of towers

11   and wires and right of way."  (ECF No. 14-1 at 22; ECF No. 13-4 at 16.)  Because there is a

12   written grant, the scope of the easement is determined by the language of that grant.

13        Under this grant, PG&E has a clear right to cut and even clear completely all trees and

14   brush that might interfere with the power lines.  Even if PG&E's right to cut and clear the land

15   under the lines is tempered by the interference clause, the clause itself imparts a significant

16   amount of discretion on PG&E.  PG&E only has to avoid interference with agriculture use, "so

17   far as it reasonably can."  (ECF No. 14-1 at 22; ECF No. 13-4 at 16.)  While PG&E's earlier

18   practice of trimming the trees to a ten (10) foot clearance may have interfered less with

19   agriculture, their policy to increase trimming to twenty (20) feet of clearance is not unreasonable.

20   Trees coming into contact with power lines present a significant danger, not only of power

21   outages, but of fire.  Even the CPUC in its decision noted that "…having already determined that

22   Defendant's conduct is necessary, proper, and reasonable, the Commission holds that, should a

23   proper easement exist, Defendant has acted prudently and reasonably in accommodating the

24   agricultural use of the land."  (ECF No. 14-1 at 95; ECF No. 13-7 at 14.)  The CPUC decision

25   further stated that "[b]ased on the evidence in this case, it was reasonable to find that 20 foot

26   trims did accommodate the agricultural use of the land so far as was practicable."  (ECF No. 14-1

27   at 136; ECF No. 13-8 at 14.)  The Court agrees with the CPUC that PG&E's actions were

28   _____
     [5] The Court has taken judicial notice of this document.

                                                    13

1    reasonable under both the regulations and the easement.  Thus, the Court finds that a valid

2    easement exists and that PG&E acted within the terms of that easement in their trimming

3    practices.

4                    *ii.   First Cause of Action: Physical Taking in Violation of the Fifth*

5                            *Amendment and 42 U.S.C. §1983*

6            A *per se* taking in violation of the Fifth Amendment occurs when there is (1) a permanent

7    physical invasion of property; or (2) where regulation denies all economically beneficial or

8    productive use of land.  *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992).  Here,

9    there is no taking under either category because PG&E was acting at all times within its rights as

10   granted by the 1915 easement.  This precludes the existence of an invasion, negating the first

11   category, and PG&E was acting under its property rights, not under a regulation, negating the

12   second category.  Furthermore, because PG&E had the right to cut and clear all trees and brush

13   under the grant, Plaintiffs will be unable to amend the complaint to include facts which would

14   state a claim.  *Lopez*, 203 F.3d at 1130.  The Court therefore GRANTS Defendants' Motions to

15   Dismiss as to the first cause of action with PREJUDICE.

16                   *iii.   Second Cause of Action: Conspiracy to Defraud and Fraud*

17           Plaintiffs allege fraud and conspiracy to defraud on the basis that PG&E and CAISO

18   misrepresented existing regulations.  (ECF No. 1 at ¶¶ 60–79.)  Specifically, Plaintiffs contend

19                    PG&E has made and continues to make false and misleading
20              representations to growers, including Plaintiffs, to induce in
                Plaintiffs and property owners the mistaken belief that PG&E has
21              the right, without compensation for property taken or destroyed, to
                conduct such excessive, destructive trimming and that such
22              trimming was required by law including representations (i) that
                excessive trimming is mandated by CAISO regulation requiring a
23              minimum clearance between 115kV lines and vegetation of 10 feet
                be maintained at all times, where, in truth, CAISO had issued no
24              such prescriptive regulation and the 19 inch minimum clearance set
                forth in GO 95 was the only governing law or regulation these
25              115kv lines, and (ii) CAISO regulation requires a clearance at time
                of trimming of 20 feet between 115kV lines and vegetation be
26              maintained at all times, rather than the 10 foot clearance set by GO
                95 where, in truth, CAISO had issued no such regulation and the 10
27              foot time of trimming clearance set forth in GO 95 was the only
                applicable regulatory guideline and, (iii) that trimming beyond the
28              minimum clearances set by GO 95 is required by unspecified
                directives and regulations of federal agencies identified as FERC,

                                              14

NERC, and WECC where, in truth, FERC, NERC, and WECC had issued no such directives or regulations as to the 115kV lines at the Property.

(ECF No. 1 at ¶ 62.)

Defendants note that "to plead fraud in California, plaintiffs must plead a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." (ECF No. 13-1 at 20) (citing *Grant v. Pensco Trust Co.*, LLC, 2013 WL 4772673, *3 (N.D. Cal. Sept 3, 2013)).  Here, Plaintiffs fail to adequately allege "damages resulting from reliance on a misrepresentation."  *Bldg, Permit Consultants, Inc. v. Mazur*, 122 Cal. App. 4th 1400, 1415 (2004).  All damages that Plaintiffs allege are a result of PG&E's actions that were and are within the scope of the easement.  Because all alleged damages were the result of legal activity, Plaintiffs have failed to plead any damages resulting solely from any alleged misrepresentation.

Further, Plaintiffs' fraud claims turn on the issue of whether PG&E had the right to cut vegetation back to a 20-foot clearance under CAISO regulations.  (ECF No. 1 at ¶¶ 60–79.) Fraud requires that a false representation be made with knowledge of its falsity.  *Grant*, WL 4772673, *3.  If PG&E was within its rights to cut back the trees, then there was no false representation.  This issue has already been decided by the CPUC which held that PG&E was acting within the scope of the regulations.  (ECF No. 14-1 at 122–138; ECF No. 13-8 at 1–16.)  In order for Plaintiffs' fraud claims to be granted the underlying CPUC decision would have to be overturned.  However, this Court does not have jurisdiction to do so.  Under Cal Pub. Util. § 1759(a) only the California Supreme Court or California Court of Appeal has jurisdiction to "review, reverse, correct, or annul any order of decision of the commission."  As this Court is not an appellate court it cannot overturn the CPUC decision.  Because Plaintiffs' fraud claims would require such action on the part of the Court, the Plaintiffs have failed to plead sufficient facts to allege fraud and any amendment would be futile because the underlying issue has already been decided.  Therefore, the Court GRANTS Defendants' Motions to Dismiss as to the second cause of action with PREJUDICE.

///

///

1

*iv. Third Cause of Action: Taking and Damaging of Property in Violation*

2

*of Art. I, Sec. 19 of the California Constitution*

3

The California Constitution provides: "Private property may be taken or damaged for

4

public use only when just compensation ... has first been paid to, or into the court for, the owner."

5

Cal. Const., art. I, § 19.  Plaintiffs allege that there has been a taking, but for the reasons

6

discussed above, section b.ii. *supra*, PG&E was acting at all times within the rights granted to

7

them in the easement.  Therefore, no taking occurred and Plaintiffs will be unable to amend their

8

complaint on these facts to state a claim because PG&E was acting within its rights.  The Court

9

GRANTS Defendants' Motions to Dismiss as to the third cause of action with PREJUDICE.

10

*v. Fourth Cause of Action: Common Law Trespass*

11

Plaintiffs contend that Defendants' actions amount to trespass.  (ECF No. 1 at ¶¶ 85–88.)

12

However, as Defendants' state, "[t]respass is an unlawful interference with possession of

13

property."  (ECF No. 13-1 at 23) (citing *Girard v. Ball*, 125 Cal. App. 3d 772, 788 (1981)).  Here,

14

there was no unlawful interference with Plaintiffs' property because PG&E acted within their

15

rights under the easement.  Furthermore, Plaintiffs do not make any allegations that CAISO ever

16

entered their land.  (ECF No. 1 at ¶¶ 85–88.)  Therefore, no trespass occurred because PG&E was

17

acting at all times under their rights and CAISO never entered Plaintiffs' land or caused others to

18

unlawfully enter their land.  Because the easement gives PG&E the right to enter, cut, and clear

19

the land Plaintiffs are unable to amend the cause of action to state a claim.  The Court GRANTS

20

Defendants' Motions to Dismiss as to the fourth cause of action with PREJUDICE.

21

*vi. Fifth Cause of Action: Violation of Civil Rights*

22

Plaintiffs claim violation of civil rights under Cal. Civ. Code § 52.1, alleging that PG&E

23

attempted to interfere, and interfered with Plaintiffs' right to own, posses, and protect property

24

under 42 U.S.C. § 1982 and Cal. Civ. Code § 671.  (ECF No. 1 at ¶ 90.)  "In order to allege a

25

claim under Section 52.1, a plaintiff must show (1) intentional interference or attempted

26

interference with a state or federal constitutional or legal right, and (2) the interference or

27

attempted interference was by threats, intimidation, or coercion."  *Shay v. Cnty. of Los Angeles, et*

28

*al.*, No. 2:15-cv-04607-CAS-RAO, 2015 WL 6513632, at *7 (C.D. Cal. Oct. 26, 2015) (citing

16

1  | *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)).

2  |         Here, Plaintiffs have failed to meet the first requirement.  They have not shown

3  | interference or attempted interference with a state or federal constitutional or legal right because

4  | PG&E was acting within its rights under the easement at all times.  Plaintiffs did not, under these

5  | circumstances, have the right to deny PG&E access, and Plaintiffs' right to own, possess, and

6  | protect property under state and federal statutes was not violated.  Accordingly, it is not possible

7  | for Plaintiffs to amend this cause of action to state a claim.  Therefore, the Court GRANTS

8  | Defendants' Motions to dismiss as to the fifth cause of action with PREJUDICE.

9  |         **IV.    CONCLUSION**

10 |         For the reasons set forth above, the Court hereby GRANTS Defendants' Motions to

11 | Dismiss Plaintiffs' Complaint with PREJUDICE.  (ECF No. 14; ECF No. 13.)

12 |

13 |         IT IS SO ORDERED.

14 | Dated:  December 10, 2015

15 |

16 |                                                        _____

17 |                                                        Troy L. Nunley
                                                           United States District Judge

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

                                            17